Let's turn to our next case, which is Adelman v. Berryhill. May it please the Court, my name is Carolyn Kubitschek, and I represent the appellant Jed Adelman and the intervenors, Jed's parents, Frederick and Abby Adelman. Jed argues that the court below erred in the portion of its ruling which upheld the determination of Social Security benefits to him for the period beginning April 2003, after having ruled that he was entitled to benefits all the way up through March of 2003. The Commissioner has implicitly conceded as much by offering that the Social Security Administration would give Jed a new administrative hearing on his entitlement to benefits for that time period. He conceded the period of recapturing those benefits, didn't concede April forward, right? The Commissioner did not concede his entitlement to benefits from April forward, but they said we are going to give Jed a new hearing on his entitlement to benefits from April going forward. That is on pages That hearing hasn't occurred. They have not offered him that hearing. No, they put in their papers that they would give him a hearing. They have not offered or done anything to follow up. But it is our position that no such hearing is necessary because effectively the Commissioner has conceded that the District Court erred in determining that Jed should not get benefits after April of 2003. I didn't understand the judge to have so ruled. I thought the judge ruled only that all that is before me is an order that concerns this period through March. That was an error and that's all that I'm going to address. Maybe that was an error by the judge, but I didn't think that the judge made some affirmative ruling that going forward after March 2003, the agency was correct in some way to not give benefits. Am I wrong about that? Well, Your Honor, if you look at the judge's decision on reconsideration, first going back, the issue of whether or not Jed was overpaid benefits up through March 2003 was not the District Court. At every stage of the administrative proceedings, Jed had argued that he remained disabled and he remained eligible for benefits. And at every stage of the administrative proceedings, three hearings, three trips to the Appeals Council, the Social Security Administration said, no, your disability ceased in 2002. And when Jed filed his complaint in the Federal District Court, he again said Social Security was wrong in saying my disability ceased. I am still disabled. So that issue was firm. And the District Court could have ruled on what would happen going forward, but I guess I started by saying that the District Court erred by ruling that the agency was correct to deny him benefits. Well, in- It seemed to imply that the, if the Court said that, then I take it the agency would, I mean, he'd be precluded by that ruling from seeking benefits from the agency for the period after 2003 because it's already been decided that they were right. But I don't, I didn't think the Court did that. Well, there were two things which led me and I think the government also to conclude that that decision was implicit. First, the District Judge ruled that there was no evidence in the record showing that Jed needed a job coach after March of 2003, which is factually incorrect. There are three or four detailed reports from the job coach subsequent to April 2003 stating that Jed could not work without the job coach. Same thing that she had said in her report of March 2003. And secondly, the government made a motion for reconsideration, which was denied and is that denial is not before this Court. But the motion said, as I interpret it, well, Judge, if you say Jed was disabled and unable to work from up through March of 2003, doesn't that mean you have to remand on the issue of whether his disability continued after April of 2003? And the Judge said the motion is denied. So I think maybe too much reading of tea leaves, but... It's complicated by the fact that it took fifteen to twenty years to get through the administrative proceedings in this case, which, incidentally, makes me somewhat concerned about sending it back from more hearings to the agency, where they can start over again about April 2003 in 2018 and maybe by 2033 they'll have figured out whether he was disabled in April of 2003. But what exactly is supposed to happen? This is not a case where anybody contends, am I right, that Mr. Edelman is cured or somehow his disability medically has lifted. Precisely. The argument is that he worked to an excessive degree, that he had substantial gainful activity, and the 2003 you're doing substantial gainful activity. A, no more benefits, and B, we're actually going to take back money from you for what we paid retrospectively in 2000, whatever it was, one and two. Now it takes many years, apparently, to figure that one out and decide that the agency was wrong. I take it your position is, well, now we're back to status quo ante. He was found to be disabled correctly, no one disputes that. They took the benefits away because of a particular fact finding, which has now been reversed. So there's no reason why he should not have been receiving benefits all along from 2003 to the present and, indeed, today going forward until and unless they bring a new proceeding and try to take away his benefits again. Is that basically what your position is? Yes, that is basically our position, that the issue is what is the remedy for going forward . . . Why didn't you just file an application for benefits at least two years ago after the district court's decision? What's wrong? Why not just say, well, we better have belt and suspenders here. Let's file a new application with Social Security Administration. We could not have done that, and this is not in the record at all, Your Honor, but in order to get a disabled adult child's benefits, that is, benefits as the disabled child of a retired wage earner, that's how Jed Edelman is receiving benefits, you must show that you have been disabled continuously since prior to your 22nd birthday. So having lost on that issue, that was res judicata for Jed, and he can't simply file a new application saying, oh, I'm disabled starting today or starting the day after the appeals counsel issued . . . How did he lose? He won. I'm sorry. He won in the district court to the extent of the district judge saying, you were not overpaid because you remained entitled to benefits. The way Jed and I read the district court decision, she went further in saying there was no evidence showing that he needed a job coach thereafter, which I've explained we disagreed with, but having lost on that issue, because of the procedural problem that he would have had to show that he was continuously disabled up through . . . from before his 22nd birthday until the day of his application . . . To the extent that the district court's ruling was that he was properly denied benefits after April 2003, you could not go back and start over again because there's now a ruling that for the April 2003 period and going forward, he's not eligible? Is that what you're saying? Yes, Your Honor. You said it much better than I could. And therefore, Jed's remedy . . . Is to appeal that . . . Appeal to this court, which is what he did, and then ask this court to say under Section 405G of the Social Security Act that the court has the power to reverse with or without remanding for a new hearing . . . This is my recollection of what the district court said, though, and I may be wrong, but I thought it just said, look, I'm not going to reach the period after that because it's not before me, not that he's not entitled to any future benefits. Well, Your Honor, if the court actually hadn't reached that decision, then perhaps one remedy might be to remand to the district court and say you made a mistake in not reaching the decision because the issue really was before you, but there was a sentence in the district court opinion . . . What did the district court say? My recollection is the district court said, I'm not going to make a decision on the period from April 2003 on because it's not before me, properly before me, not that as of April 2003, he's not entitled to benefits. Which was it? I believe it's the latter, not that it was not before her. And . . . I would have to look in the . . . but there was a categorical statement in the decision, either the initial decision itself or the denial of reconsideration that there was not evidence in the record that Job, Jed depended on. Now, it's a long time between March or April of 2003 and 2014, and there could be significant changes in this child's or this young person's life. Over that period of time, the fact is there's no evidence before the record as to exactly what his condition was in 2006 or 2008 because essentially the court didn't even address that. It wasn't even before the court. So how can you actually then ask for a ruling from this court that is, in fact, he is entitled to these benefits when in fact there's no evidentiary support for that at this juncture? Well, Your Honor, there is ample evidentiary support in the record for the period up through April of 2014, at least through the period of up through the administrative law judge decision in 2012. Because Jed's parents produced letter after letter from the job coach explaining exactly what she was doing and how he could not do the job without her. And under the commissioner's regulations, if a person cannot do a job without significant assistance, then that is not considered working. So they have all that evidence. The evidence was uncontradicted. In addition, Jed's mother and Jed's father testified at three administrative hearings the degree to which Jed's coworkers assist him. And the fact that he is working in a program at Stony Brook University, which is a program to provide employment to the disabled, and that his coworkers and the university expect that he will get a lot of help. I mean, Jed cannot even read. People have to read for him. And they help him by reading what he needs to do. The job coach also wrote, and again, this is around 2011 or 2012, that the goal of this EARN program, to provide jobs and dignity to the disabled, is that ultimately with training and one-on-one supervision and being followed around by a job coach, eventually the person will learn how to work independently. And she says Jed has not yet reached that stage. So, yes, the record not only contains that evidence, but in fact it's uncontradicted. And therefore, because this is a proceeding to terminate benefits, we submit that the commissioner has the burden of proof. The commissioner did not present any proof at all that Jed was working independently. And therefore, under the regulation 404.1573B, he was not considered to be engaging in, as the government says, substantial gainful activity. But, yes, the record is very clear for the period up through 2012. Now, the question is what should happen after that. I know this is more than your time, but you have a few minutes left for rebuttal. Would you rather use them now? Yes, Your Honor. No, I'd rather use them for rebuttal. Okay, so we'll hear from Mr. Marutolo now. Marutolo. Yes, Your Honor. Good morning, Your Honor. May it please the Court, my name is Joseph Marutolo. I'm an assistant U.S. attorney with the Eastern District of New York, here on behalf of the Commissioner for Social Security. This Court should affirm the judgment, and to answer Judge Troni's question earlier, ultimately the district judge was very clear in her November 2016 decision, saying that if plaintiff hopes to receive disability benefits for the post-March 2003 period, he may submit a new application and may present whatever evidence he deems appropriate. Well, Mr. Marutolo, I'm puzzled by that. I thought the state of play was that he was found eligible for benefits by the agency back in the last millennium or something, and he was receiving those benefits, right? Then there was an effort by the agency to cut him off because in a period which was, I mean, I'm not saying you were going back to ancient history. We were in ancient history. It was back then. You said he's now got a job, he's got substantial gainful activity, his benefits should be terminated, right? And that happened in whatever, 2002, 2003, in that past era, yes? That's right, Your Honor. And it's now been determined, mysteriously taking until whatever, 2016, when the judge issued her ruling, that the agency was incorrect to cut him off at that point, right? Well, Your Honor, what the determination that was made by the district court was whether or not Jed Adelman was entitled, whether or not there should be an overpayment that Social Security can obtain. That was the issue before. There was no overpayment because the agency was wrong in deciding that he should not have been receiving benefits, yes? Well, yes, Your Honor. However, the issue is ultimately about whether or not he is performing substantial gainful activity. And the answer is he wasn't. Well, Your Honor, at that point, at the point at issue, yes. But that's the point that was litigated. It's at that point that he was both held to have been being overpaid for a while, and that he was not going to get paid anymore in the future, right? Well, no, only until March 2003. From February 2002 through March 2003, the Social Security Administration initially determined that there was an overpayment. The district court has, you know, ultimately said that that was incorrect. So why did he not get benefits in April 2003? Because in April 2003, there's been no evidence in the record indicating — No, why in April 2003 did he not get benefits? Well, because by that point, Your Honor, the Social Security Administration had determined that there had been an overpayment. Right. Only until — But suppose it was wrong. You see what the problem is? If this had all been adjudicated in a hurry, if in 2003, in April or May of 2003, we figured out authoritatively that there was no overpayment, what would have happened then? Would he have needed to file a new application? Well, ultimately, Your Honor, he's seeking here childhood disability benefits. And at that stage, in March of 2002, following the Social Security Administration's determination, there was a decision rendered that there was an overpayment. That was the law of the land, essentially, until the district judge rendered her decision in 2016. So what he should have done is every month thereafter, he should have filed a new application? No, Your Honor. The determination that needed to have been made is to show substantial gainful activity, you know, whether or not he was performing substantial gainful activity for the period thereafter. So you would have to show that he was engaged in substantial gainful activity for those succeeding months? In order for him — yes. In order for him to not receive benefits? Yes. And when did you make that showing? Well, Your Honor, ultimately, the plaintiff — excuse me if I misspoke. The plaintiff needs to show that he is not able to engage in substantial gainful activity. At that stage, the — Wait. So assuming that you folks had never made this termination decision or claim for back benefits or whatever it was that you made, if that application, that ruling had never happened, would he not have continued to receive benefits month by month until and unless the agency thought that in that future month he was engaged in substantial gainful activity? It would have depended on whether or not there had been a month-to-month determination comparing the plaintiff's earnings to his applicable — to his circumstances and comparing those to the applicable substantial gainful activity levels. But he would have gotten — he wouldn't have had to file a new application, would he? No, but he would have had to keep showing his monthly earnings statements. Would he have to every month make a submission to the agency? Well, Your Honor, I think, you know, in terms of the process of how this works, ultimately there would need to be a verification of these monthly earnings in order for him to continue receiving these benefits, these childhood disability benefits. But how does that process work? What I'm asking is, had the agency not intervened because it looked at whatever he submitted or it looked at whatever evidence it had and decided to take action against him because it believed that he had been engaged in substantial activity, right? If that didn't happen, going — on a going-forward basis, there would have been what, monthly forms that he had to fill out? Your Honor, ultimately, yes. There would need to have been some kind of evidence to show that he is — you know, whether or not he can perform substantial gainful activity. And that's why this case, the district court correctly held that there's — the evidence is devoid in the record of any of that monthly activity. So what do you think has to happen next? At this point, Your Honor, the government's position is that the district court's order should be affirmed. In our brief, we noted that there should be a remand in order to — So it's not exactly affirmed because we're changing — we'd be changing what the district court did. The district court said, I'm done. We're out of here. He wins about this effort to reclaim past benefits. End of story. Don't bother me anymore. You're asking us, in effect, to partially vacate that order, to affirm that part of it that said — which isn't even appealed by you, and then to send it back to the district court with instructions to remand it to the agency, which is something the district court did not order, right? No, Your Honor. And to clarify, at the point in time when we filed our brief, there was still an outstanding issue of $14,000 that needed to be repaid to the Edelmans, essentially. That has since been repaid. That's no longer at issue. Before this court, the plaintiffs have conceded that that's a moot point. But what do you think needs to be remanded to the agency? Nothing at this point, Your Honor. And that's why I just want to clarify that the remand was, as we pointed out in our brief, just to effectuate payment for this $14,000 figure. Okay, so now I'm back to my question. What is supposed to happen next? Mr. Edelman has believed all the way through, his parents throughout this entire ordeal have always said the agency was wrong to take this action because he is disabled, he always was disabled, he has never engaged in substantial gainful activity because the money he's earned has always been in the context of this kind of program. The very thing that the court ruled was correct as of March of 2003. Now, are you telling me that Mr. Edelman is now forever precluded from filing an application for April of 2003 benefits because he didn't submit proper documentation in April 2003 while this was going on? No, Your Honor. As the district court pointed out, at this point, he can now file an application for that period after March 2003. And he's going to have to come up with documentation from 15 years ago as to what exactly the job coach was doing for him in April of 2003? Well, Your Honor, I think my understanding of the record is that he's worked at the same employer since 2003. There would ultimately need to be a comparison. So that's why I'm wondering why this isn't over. All through, he has been contending, and I don't see any evidence to the contrary, that he has been in the same program, receiving the same kinds of income, the same kinds of treatment, the same kind of assistance with performing his job. And the position of the Edelmans has been none of that has ever changed. But, Your Honor, there's no evidence to that. The district court was very clear. What about the letters that were submitted by the job coach? Were they limited to 2003, or were they? Your Honor, in the record, there's one letter, a letter from a job coach, that says that the Edelman went twice a month in 2011. How many decades is it going to take if Mr. Edelman and his family start submitting information about April 2003 now, in 2018, when it took approximately fifteen years to get us to this point for the agency to properly acknowledge or to be told by a district court that he was improperly terminated because he was not engaged in substantial activity through March of 2003? Any predictions on that? Well, Your Honor, respectfully, the district court noted that the delays at the administrative level were engendered by the need to develop the record each at the plaintiff's own request. But having said that— Because each time they ruled against him, and he went to the appeals council, and they sent it back. And then they ruled against him again, and he went to the appeals council, and then they sent it back. And then finally, the appeals council gave up and affirmed the decision against him, and he went to the district court and got that reversed. And that took fifteen years. And what I'm trying to figure out is what are we supposed to be doing here? Where is the justice in a system that says, well, we're going to have to do a full investigation to decide whether his condition has changed, when there's no evidence, there's no suggestion, nobody even imagines that his condition has changed or that his program has changed. He's been working in the same place for all these years, as far as I can see. But, Your Honor, we don't know what his adjusted earnings are, and we have to compare those to the applicable SGA levels. That information is just not there. And ultimately, the mental impairment is not dispositive here. There's no dispute that he has a mental impairment. Can I follow up on Judge Lynch's question? Why are we here? So why didn't two years ago, after you lost and you conceded it, counsel for both sides get together and say, okay, now we've got to fix that other period after April 2003. We've got the application here. We can work on it together. Maybe we'll disagree. We're not conceding. He gets it in 2004, 2005, or 2006. But we really should start processing the last period. Were there any discussions like that? Yes, Your Honor, there were. Without going into the issues in a confidential camp conference, we had extensive camp conferences here. And ultimately, the government's position is that there's nothing that's needed. It just should be an affirmance, and this would go back. No, we're not talking about an affirmance of the period up to March 2002. I'm talking about what Judge Lynch is talking about. Why couldn't we just two years ago have started the process of taking it off to April 2003? That's what lawyers do, right? Yes, Your Honor. Did you try to do that? We did try to do that, Your Honor. Oh, really? And they didn't want to do it? Well, Your Honor, there was a pro se plaintiff for most of this period until the end here, really, until this last brief. Was Dubichik involved at the time of the camp conference? I'm sorry? Was there counsel at the time of the camp conference? Yes, Your Honor. And we did, you know, we had multiple meetings with the mediator, and it was something where we were moving very, I think, in a fruitful way. But ultimately, you know, there was a disagreement, and we're here. And at this stage, the issue is ultimately the district judge, you know, correctly said that there's not enough evidence for this post-March 2003 period for her to make a ruling. Well, again, let's even assume that that's true. I guess I would tend to expect it to be true because the litigation and the agency focused on this earlier period. But what I'm concerned about is who bears the risk of an erroneous adjudication by the agency in 2003 about what's going to happen going forward when . . . I think there may have been lawyers occasionally, or was he pro se all the way through? He did have lawyers at various points, and then it often went back to being pro se. But, you know, I mean, I'm sympathetic to the government, too, in a sense. I mean, I appreciate that if you're litigating because you think that he should have been cut off in 2003, no one expects at the outset of this process that it's going to take 15 years to get a resolution of that determination. And just as I don't know why the Edelmans should have been expected to be constantly updating information about what's going on in 2003, 2004, 2006, 2012, while they're still fighting this original determination, I understand that the government also probably shouldn't be saying, okay, we're now going to take on a new burden of proof about years going forward. But now that we're here, what I'm trying to figure out is why there can't be some kind of expedited process, why we have to go back to an administrative law judge or a series of administrative law judges with no control by the courts over what's going to happen, when we saw the last time it took 15 years to get to the determination that the agency had erred. Why isn't there some ability to have some more informal process by which the agency can look at this case and determine in an expedited fashion whether there's really a ground of dispute about what happened during all those years or not? Why can't we get some more? Well, I think there will be, Your Honor, because here there won't be a situation where, you know, the Edelmans are starting right from the beginning. We're having to show a mental impairment and show different pieces of evidence. Ultimately, what they need to show here is, you know, monthly earnings statements, evidence of work-related expenses, things that are necessary in order for there to be a determination as to whether or not he performed the SGA. So I think ultimately, you know, assuming that the plaintiff provides that evidence, it should be, I think, a much more expeditious adjudication here. And could you just, I mean, I know it's complicated, everything is complicated, but I had the impression, no doubt erroneous from review of the decisions below, that all along he was receiving more income at a level that would be substantial gainful activity if he was just working for, you know, Verizon installing electric wires. And that the thing that made him win this case was that somehow all or just a part of that earning didn't count because it was in a supported environment? Yes, Your Honor, and that ultimately the job coach's role, the district court found, was such that, you know, there should not have been an overpayment. He's been working this whole time in the same place. Is there some amount of money he could have been earning if he gets raises every year or something that it no longer matters whether he needs the job coach? Well, Your Honor, I think it's, with respect to the job coach, it's something that, you know, there needs to be an assessment as to what was going on with the job coaching. You know, was it something where, you know, the job coach was actively involved? And that's why there's that evidentiary piece to say, is it something where the job coach is merely supervising or does the job coach have to be very hands-on during this period? And that ultimately is nowhere to be found in the record. And, you know, what the administration needs to do is to evaluate whether the value of the services provided by the job coach, along with any income-related work expenses incurred by the plaintiff, you know, whether that, subtracted from the gross monthly earnings, determines the countable earnings here in order to see if he's performing SGA. I understand, though, you've represented, though maybe I'm wrong, that you will do your best to expedite the next step with the agency. Is that right? You yourself? Me personally? Yes, Your Honor, absolutely. Of course, we'll always try to . . . You're dealing with a problem here because you haven't got sufficient record to establish whether, in fact, he's getting job help during this whole period of time, whether his income is, et cetera. Essentially, the documentation is not there. But the fact is I thought the district court suggested cases dismissed because they didn't deal with those particular issues but encouraged the plaintiff here to actually file a complaint and then begin the process again. So it sounds to me like you're on the same page as the three of us, that is, you want to move this along, but essentially you have to get this kind of evidentiary support to be able to order those benefits. Yes, Your Honor. That is correct, Your Honor. Thank you. Thank you, Ms. Maritolo. Ms. Kuczek, you have a few minutes. Yes, Your Honor. A couple of things. First, on what would have happened if Jed had gotten approved and then nothing happened, then there was no termination. And what would happen is because he was working and paying FICA, the Social Security Administration would have a monthly, would and does have a monthly record of his earnings. So they know what he's making. That is not something they have to go back and develop the record on. Furthermore, by law, the Social Security Administration must do a continuing disability review every year of every person who is receiving benefits. And that involves looking at not only at earnings but at how the person does the job, whether it's supported or subsidized employment, what is the individual's disability, if necessary. And the Social Security Administration also has that lengthy history for Jed. Now, with regard to there isn't enough evidence in the record, then we... Do they have that for him in the sense that I thought he was not a person receiving benefits from 2003 until the present? They have the information about his earnings. Even now, because they're from FICA. But they do not have information in their files from some sort of monthly review of what's he actually doing at Stony Brook and how many services is he running? Social Security never does monthly reviews of any of its recipients. They do an annual review. And they happen to have the information because Jed has had three administrative hearings. And at all of those administrative hearings, his parents have produced evidence as to the degree to which he relies, he needs the services of a job coach and the assistance of his coworkers in this special program for the disabled. The Social Security Administration has had the option of doing exactly what the parents did, calling up, getting information, and presenting at any of these three hearings contradictory information. And they didn't. And even now, even today, the Social Security Administration argues that the dollar amount of his earnings is determinative. We'll subtract a little bit how much the job coach charged. But that's not what the regulations say, if I could read the regulation. If you are unable to do ordinary or simple tasks satisfactorily without more supervision and assistance than is usually given other people doing similar work, this may show that you are not engaging in substantial gainful activity. It doesn't say how much are you earning and what is the value, how much is the job coach costing you, which, by the way, the job coach does pay, does charge for her services. This is can the person work independently, and if the person cannot work independently, then the person is not engaging in substantial gainful activity. And because Jed was terminated, because his benefits were terminated after he began receiving them, the Social Security ‑‑ I'm sorry, Congress had said when they passed the Disability Benefits Reform Act, when the government is seeking to terminate disability benefits, the burden is on the government, not on the individual, to show. And so we would ask that the benefits be reinstated and that if the government wants to terminate his benefits now, they can do so, but they have to do it correctly. Thank you. We'll reserve decision.